[No. B209178. Second Dist., Div. Eight. May 13, 2010.]

S.M., a Minor, etc., et al., Plaintiffs and Appellants, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

## Counsel

Orren & Orren, Tyna Thall Orren; Richard R. Reyes; and Victor Jacobovitz for Plaintiffs and Appellants.

Carlson & Messer, Jeffery J. Carlson and Edgar N. De Vera for Defendant and Respondent.

OPINION

RUBIN, J.—S.M., a minor, appeals from the summary judgment entered on her action against the Los Angeles Unified School District for negligent supervision of a teacher who sexually fondled her. Because the undisputed facts show that S.M. waited too long to file the required tort claim with the school district, we affirm.

## FACTS AND PROCEDURAL HISTORY

S.M. sued the Los Angeles Unified School District (the district) for negligence after she was repeatedly fondled by Michael McMurray, her fourth grade teacher at Plainview Elementary School during the 2002–2003 school year. According to S.M., McMurray would rub her leg from ankle to thigh while kneeling by her desk to answer questions about her schoolwork. This happened regularly during the school year even though she would move her legs away or tell McMurray to stop. As a result, S.M. stopped asking questions about her schoolwork to keep McMurray away.

The undisputed facts showed that the school year ended on June 30, 2003, that S.M. had a different teacher the next school year and had no contact with McMurray, and that she switched to a different school for sixth grade. S.M. testified at her deposition that she felt what McMurray was doing was wrong, and that his actions made her scared and nervous. Therefore, the district contended, her cause of action accrued no later than June 30, 2003, when the school year ended. Instead of filing a tort claim by December 30, 2003, however, she did not do so until April 12, 2005, meaning her claim was barred. The district moved for summary judgment on that basis.[1]

S.M. was one of several girls who were sexually fondled by McMurray. Acting out of embarrassment and fear they might somehow be blamed, they agreed to keep quiet and not tell their parents what had happened. McMurray was arrested October 14, 2004, when one of his victims came forward and reported the incident to the police.[2] S.M.'s mother learned of the arrest that day, and asked S.M. what she knew about it. S.M. told her mother what McMurray had done to her, and her mother filed a tort claim with the district

---

[1] S.M. also had a cause of action for sexual battery against the district on a vicarious liability theory. The trial court granted summary judgment on that claim because the district could not be held liable under that theory. (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 441 [256 Cal.Rptr. 766, 769 P.2d 948].) S.M. does not challenge that ruling on appeal.

[2] S.M. has asked us to judicially notice newspaper reports that McMurray was later convicted of sexually abusing several girls and sentenced to 16 years in state prison. We decline to do so.

on April 12, 2005. S.M. opposed the summary judgment motion on the ground that her cause of action did not accrue until October 14, 2004, when her mother discovered what had happened. As a result, her tort claim was timely, she argued. The trial court disagreed, and entered judgment for the district.

On appeal, S.M. contends her cause of action did not accrue until her mother learned what happened. She also raises an issue not raised below: that the district is equitably estopped from asserting the statutory time limits because it created an atmosphere of fear and intimidation that delayed her from telling her mother what had happened.

## STANDARD OF REVIEW

Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].)

A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (*o*)(2), (p)(2).) If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations or denial of her pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Id.*, subd. (p)(2).) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493], fn. omitted.)

Our first task is to identify the issues framed by the pleadings. (*Lennar Northeast Partners v. Buice* (1996) 49 Cal.App.4th 1576, 1582 [57 Cal.Rptr.2d

435].) The moving party need address only those theories actually pled and an opposition which raises new issues is no substitute for an amended pleading. (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342 [67 Cal.Rptr.2d 726].)

## DISCUSSION

### 1. *S.M.'s Cause of Action Accrued by June 30, 2003*

■ Under the Tort Claims Act, a person may not sue a public entity for personal injury unless he or she first presents a written claim to the entity within six months of the time her cause of action accrues, and the entity then denies the claim. (Gov. Code, §§ 911.2, 945.4.)[3] If the public entity does not give written notice that the claim has been rejected (§ 913), the plaintiff has until two years from the date her cause of action accrued to sue the entity. (§ 945.6, subd. (a); *K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229, 1233 [92 Cal.Rptr.3d 1] (*K.J.*).)[4] The claim-filing requirement is not merely procedural, but is instead a condition precedent to maintaining a cause of action and is therefore an element of a plaintiff's cause of action. (*K.J.*, at p. 1238.)

■ The accrual date for presenting a government tort claim is determined by the rules applicable to determining when any ordinary cause of action accrues. (§ 901.) That date may be postponed under the delayed discovery doctrine. (*K.J., supra,* 172 Cal.App.4th at p. 1233.) Under this doctrine, a cause of action does not accrue until the plaintiff discovers, or has reason to discover, the cause of action. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 [27 Cal.Rptr.3d 661, 110 P.3d 914] (*Fox*).) A plaintiff has reason to discover a cause of action when he or she has reason to at least suspect a factual basis for its elements. Suspicion of one or more of the elements, coupled with knowledge of any remaining elements, will generally trigger the applicable limitations period. (*Ibid.*) This refers to the "generic" elements of wrongdoing, causation, and harm and does not require a hypertechnical approach. Instead, "we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Ibid.*)

The district contends that because S.M. testified she knew what McMurray did was wrong, her cause of action accrued no later than the end of her fourth grade school year on June 30, 2003. Because her claim was not filed with the district until nearly two years later, the district contends her action was barred.

---

[3] All further undesignated section references are to the Government Code.

[4] S.M. did not sue until June 20, 2006.

S.M.'s summary judgment opposition did not dispute the content of her deposition testimony. Relying on *Curtis T. v. County of Los Angeles* (2004) 123 Cal.App.4th 1405 [21 Cal.Rptr.3d 208] (*Curtis T.*), she argued that because of her age and inexperience, her knowledge of wrongfulness was irrelevant, and her cause of action did not accrue until October 14, 2004, when her mother learned what happened. Under that scenario, she contends, her tort claim was timely filed, and her complaint was timely because she sued within two years of the time her cause of action accrued.

To the extent S.M. contends *Curtis T.* holds that a minor's sexual molestation cause of action does not accrue until a parent learns of the molestation, she has misread that decision. The plaintiff in *Curtis T.* was placed in foster care by Los Angeles County when he became the subject of a dependency proceeding under Welfare and Institutions Code section 300. (*Curtis T., supra*, 123 Cal.App.4th at p. 1411.) He lived in foster care between the ages of five and eight until October 1999, when the dependency case was terminated and he was returned to his mother. In March 2003, when the plaintiff was 12, he filed a claim with the county alleging that he was sexually molested by another child while living in the foster home. When the county denied the claim, the plaintiff sued, alleging that his foster parent knew about the molestation but did nothing to stop it, and that his mother did not learn about the molestation until September 2002. (*Id.* at p. 1412.) The trial court sustained without leave to amend a demurrer to the complaint because the minor did not file a claim with the county within six months of the time when the molestations ended. (*Id.* at p. 1414.)

The *Curtis T.* court reversed, holding that the delayed discovery rule applied to child molestation cases, and that the plaintiff should have been granted leave to amend, if he could truthfully allege that "given his youth, ignorance, and inexperience, as well as his foster parent's alleged complicity in the abuse—that he lacked a real awareness, until his mother's discovery of the alleged molestation, that what happened to him between the ages of five and eight was wrong." (*Curtis T., supra*, 123 Cal.App.4th at pp. 1422–1423.)

As part of its analysis, the *Curtis T.* court discussed *Whitfield v. Roth* (1974) 10 Cal.3d 874 [112 Cal.Rptr. 540, 519 P.2d 588] (*Whitfield*), which the plaintiff relied on to argue that his cause of action did not accrue until his mother learned about the molestations. The plaintiff in *Whitfield* was a girl who, between the ages of 10 and 13, was treated by both private and county-run medical facilities, and was misdiagnosed with a psychiatric condition when she in fact had a brain tumor. Surgery to remove the tumor caused a stroke that left her paralyzed and with a greatly reduced life expectancy. She first sued the various private hospitals and doctors, but, during discovery, obtained documents showing that some of her county

doctors suspected a brain tumor but did nothing to follow up on those suspicions. She then filed a tort claim with the county, which was denied, and amended her complaint to add the county as a defendant. At trial, the county was granted a nonsuit on the ground that the plaintiff did not timely file her tort claim. Citing two other medical malpractice cases involving *injured infants*—*Wozniak v. Peninsula Hospital* (1969) 1 Cal.App.3d 716 [82 Cal.Rptr. 84] and *Myers v. Stevenson* (1954) 125 Cal.App.2d 399 [270 P.2d 885] (*Myers*)—the *Whitfield* court said, "Where the plaintiff is a minor, it is not the knowledge or lack thereof of the minor, but the knowledge or lack thereof of the minor's parents which determines the time of accrual of the cause of action." (*Whitfield, supra,* 10 Cal.3d at p. 885.) Even though the plaintiff's mother knew a year before filing her claim that the plaintiff had a brain tumor and that a misdiagnosis might have occurred, it was not until she obtained the county medical records during discovery that she in fact knew the negligent cause of the daughter's injuries. Accordingly, there was sufficient evidence to avoid the nonsuit. (*Id.* at pp. 886–887.)

In discussing *Whitfield,* the *Curtis T.* court rejected the notion that it stated a blanket delayed discovery rule applicable to all causes of action by plaintiffs who are minors: "While there is no blanket rule for always or never applying the delayed discovery rule to minors' molestation cases, we believe the courts may equitably apply the delayed discovery rule in appropriate child molestation cases. *Whitfield* . . . does not offer much, if any, guidance on when the courts should apply the delayed discovery rule in contexts other than medical malpractice." (*Curtis T., supra,* 123 Cal.App.4th at p. 1418.) The *Whitfield* court's statement that the knowledge of a minor plaintiff's parent controls accrual "does not, in our view, create a blanket delayed discovery rule applicable to *all* causes of action where a minor is the plaintiff." (*Curtis T.,* at p. 1418.) Because earlier decisions had already applied the delayed discovery rule to child molestation victims who sued as adults, "it is all the more reasonably possible for a 12- or 13-year-old child such as plaintiff to allege he was unaware that the acts done to him between the ages of five and eight were wrongful, particularly when he also alleges that his foster parent saw the alleged molestation but failed to stop it." (*Id.* at p. 1422.) Therefore, it was "reasonable to believe this minor plaintiff can amend to allege that due to his youth, ignorance, and inexperience, coupled with his foster parent's alleged complicity in the abuse, he was unaware that what was done to him was wrongful prior to his mother's discovery of the abuse." (*Ibid.*)

In short, *Curtis T.* did not hold that a minor's cause of action for sex abuse accrues only when a parent learns what happened. Instead, it adopted a circumstance-heavy approach, pegged to the unique facts of each case, and

held that, given the right circumstances, a minor suing for sexual abuse is entitled to show that the cause of action did not accrue until a parent learned what happened or some other date after the abuse occurred. The court in *V.C. v. Los Angeles Unified School Dist.* (2006) 139 Cal.App.4th 499 [43 Cal.Rptr.3d 103] (*V.C.*), applied *Curtis T.* to hold that a demurrer was properly sustained to a minor's complaint for sexual molestation. The plaintiff in *V.C.*, while between the ages of 11 and 13, was allegedly molested by her teacher. The district's demurrer to the complaint was sustained without leave to amend because the plaintiff did not file a tort claim until more than a year after the molestations ended. While the record included a psychological assessment that cast doubt on whether the plaintiff truly appreciated what had been done to her, it also showed that the plaintiff's mother had long harbored suspicions that the teacher was molesting her daughter. As a result, the plaintiff could not plead facts supporting a delayed discovery theory. Even though it was "dismayed by the result," Division Two of this court affirmed because the plaintiff failed to plead facts supporting her claim of delayed discovery. (*Id.* at pp. 504, 515–516.)

■ Applying *Curtis T.* and *V.C.* here, we too are constrained to conclude that summary judgment was proper. S.M.'s complaint incorrectly alleged that the molestations occurred on October 14, 2004, and that a tort claim was filed with the district on April 12, 2005.[5] It was silent on the delayed discovery issue, making no mention of factors that might have prevented S.M. from becoming aware she had been wronged, or about her mother's discovery of what had happened. The district's summary judgment motion cited the portions of S.M.'s deposition testimony that she knew what McMurray did was wrong, that she repeatedly tried to avoid his advances, and that his conduct made her scared and nervous. This evidence, if believed, shows that S.M. knew the generic elements of her claim—that she had been injured by McMurray's wrongdoing. (*Fox, supra,* 35 Cal.4th at p. 807 [cause of action accrues when plaintiff at least suspects that a type of wrongdoing has injured them]; *Marsha V. v. Gardner* (1991) 231 Cal.App.3d 265, 272–273 [281 Cal.Rptr. 473] [a young child sexually molested against her will suffers an actual and appreciable injury at that time and would be entitled to more than nominal damages].) It also placed the burden on S.M. to raise triable fact issues that she had not actually discovered her cause of action at the time the molestation occurred. She did not, relying solely on the mistaken belief that, as a matter of law, it was her mother's knowledge that counted, not hers. If S.M. had submitted a declaration that explained her deposition testimony and cast doubt on whether she appreciated the wrongfulness of McMurray's

---

[5] S.M. contends, and we agree, that the allegation was nothing more than technical error about when the molestations occurred.

conduct—"lacked a real awareness" in the words of *Curtis T.* (*Curtis T., supra*, 123 Cal.App.4th at p. 1422)—or if she had submitted a declaration from a child psychologist or other expert that put her testimony in context beyond her literal words, then under *Curtis T.* and *V.C.*, she might have raised a triable fact issue to support her claim of delayed discovery. She did neither.

S.M. tries to avoid this result by way of Code of Civil Procedure section 340.1, which sets the limitations period for childhood sexual molestation claims. Under that statute, a plaintiff can sue an entity if it bears legal responsibility for childhood molestation committed by one of its agents or employees. If the entity was on notice that its agent posed a risk of molesting children, the plaintiff may sue up to the later of age 26 or three years after discovery that psychological injury occurring after adulthood is the result of the childhood molestation. (§ 340.1, subds. (a)(2), (b)(1), (2).) According to S.M., it is the manifestation of this adult-onset psychological injury that starts the accrual date of a cause of action for childhood molestation, and, when the molestations occurred, there was no way she could have possibly anticipated the extent or magnitude of that type of injury. We disagree that section 340.1 has any direct application here. That statute extends the time during which a victim of childhood sexual abuse may sue, but it does not alter the cause of action's accrual date, which is when the molestation occurred subject to any applicable delayed discovery. (*V.C., supra*, 139 Cal.App.4th at pp. 509–510.) It is the date of accrual that triggers the government tort claim filing requirement, a predicate not addressed by section 340.1.

As a final observation, we do not intend to suggest a 10 year old, or a child of any age, necessarily has a real awareness of a wrong at the moment child sexual abuse occurs, or that abused children must as a matter of law report child abuse immediately to their parents upon penalty of losing their legal claims. Even in those cases in which the child has a vague appreciation that something is "wrong" because he or she experiences fear, discomfort or other emotion often associated with sexual abuse, the child may not have the real awareness to which *Curtis T.* refers. Conversely, it may very well be true, as the court in *Myers, supra*, 125 Cal.App.2d at pages 402–403, pointed out, that a child of six years old or less "could not in the nature of things know of his injury or the cause thereof . . . ." The present case does not lend itself to the conclusion that as a matter of law a 10 year old is or is not aware that the acts done to the child were wrongful. Our holding is that in this case, like many others, this is a factual question. Here, no triable issue of fact on that point was presented.[6]

---

[6] In apparent recognition of the dilemma faced by families of children abused by public school officials, the law has changed. For claims described in Code of Civil Procedure section 340.1 for the recovery of damages suffered due to childhood sexual abuse occurring after

## 2. S.M. May Not Rely on Equitable Estoppel

S.M. contends the district is equitably estopped from asserting noncompliance with the claim filing requirement because conduct by both McMurray and the school principal deterred her from coming forward earlier. A public entity may be estopped from asserting noncompliance with the statutory claim filing deadline by some affirmative act of intimidation, such as threats or violence. (*V.C., supra*, 139 Cal.App.4th at pp. 516–517.) To support this claim, S.M.'s appellate brief points to evidence submitted with her summary judgment opposition brief in the trial court that the principal had yelled at her mother for an unrelated matter and had dismissed or failed to follow up on reports about misconduct by McMurray. She also relies on her deposition testimony that she was afraid of reporting what happened because McMurray was a teacher.

■ We do not dismiss the possibility that a child might perceive that authority figures such as teachers, school counselors, or principals, will present a united front to defend against the child's accusations, and might fear reprisals should she come forward with those accusations. However, there must be proof of an affirmative act of intimidation or violence that was intended to deter the child from speaking up. (*V.C., supra*, 139 Cal.App.4th at pp. 516–517.) Although S.M.'s evidence might show her apprehension about reporting what happened because the principal was generally hostile or appeared protective of McMurray, it does not establish an affirmative act, such as an expressed or implied threat, specifically intended to deter S.M. from coming forward and filing her claim. (See *K.J., supra*, 172 Cal.App.4th at p. 1240.) Regardless, the issue was not raised below, either as part of S.M.'s points and authorities or responsive separate statement. Although the district does not mention this, and instead responds to S.M.'s claim on the merits, we deem the issue waived for two reasons: (1) it was not pleaded in the complaint (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1201, fn. 5 [37 Cal.Rptr.3d 863]); and (2) because it was not raised below, either in the points and authorities or the opposition separate statement of disputed facts (*Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872–873 [36 Cal.Rptr.3d 515]; *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 640–641 [134 Cal.Rptr.2d 273]).

---

January 1, 2009, the tort claim presentation requirement no longer applies. (Gov. Code, § 905, subd. (m); see Historical and Statutory Notes, 32 West's Ann. Gov. Code (2010 supp.) foll. § 905, p. 154.) However, the Legislature did not see fit to include an earlier cutoff date that would have preserved S.M.'s claims, and we have no power to rewrite the statute.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its appellate costs.

Bigelow, P. J., and Grimes, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 28, 2010, S183745. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.