**Rebecca YUMUL, individually, and on behalf of all others similarly situated, Plaintiff,**

v.

**SMART BALANCE, INC., Defendant.**

**Case No. CV 10–00927 MMM (AJWx).**

United States District Court, C.D. California.

July 30, 2010.

Gregory S. Weston, John Joseph Fitzgerald, IV, The Weston Firm, San Diego, CA, Jared H. Beck, Elizabeth Lee Beck, Beck & Lee Business Trial Lawyers, Miami, FL, for Plaintiff.

Rick L. Shackelford, Greenberg Traurig LLP, Santa Monica, CA, for Defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

MARGARET M. MORROW, District Judge.

## I. BACKGROUND

Rebecca Yumul filed this putative class action against defendant Smart Balance, Inc. on February 8, 2010.[1] Yumul's complaint alleges that she purchased Nucoa margarine, a product manufactured by Smart Balance, repeatedly during the class period, from January 1, 2000 until the present.[2]

Yumul alleges that Nucoa contains artificial trans fat, which increases the risk of coronary heart disease by raising the level of "bad" LDL blood cholesterol and lowering the level of "good" HDL blood cholesterol.[3] Yumul also alleges that trans fat

---

1. Complaint for Violations of Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act ("Complaint"), Docket No. 1 (Feb. 8, 2010).

2. First Amended Complaint for Violations of Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act ("FAC"), Docket No. 20 (June 4, 2010), ¶ 3.

3. *Id.*, ¶¶ 4–5.

causes cancer and type 2 diabetes.[4] Despite the ill effects of trans fat, Smart Balance markets Nucoa as "cholesterol free." Yumul alleges that, while possibly true, this statement is misleading, since consumption of Nucoa in fact raises the level of LDL blood cholesterol.[5] She contends that use on the product packaging of the word "healthy," (in Spanish, "saludable") is also misleading because of the negative health effects of trans fat.[6]

Yumul asserts that any statute of limitations that might otherwise bar the action is tolled because she "did not discovery that SBI's labeling of Nucoa Real Margarine was false, deceptive, or misleading until late January 2010, when she learned of the causal links between Nucoa Real Margarine and coronary heart disease, type–2 diabetes, and cancer."[7] The first amended complaint asserts that Yumul is a reasonably diligent consumer. It alleges that she "would not have been and was not able to discover SBI's deceptive practices and lacked the means to discover those practices because, like nearly all consumers, she is not an expert on nutrition and does typically read or have access to those scholarly journals ... where the scientific evidence on *trans* fat's dangers ha[ve] been published." The complaint also asserts that "SBI's labeling practices (in particular, falsely representing Nucoa Real Margarine as 'healthy' and good for cho-

lesterol) have actively impeded ... Yumul's ability ... to discover its fraud."[8]

Yumul pleads three causes of action: (1) violation of California's unfair competition law ("UCL"), California Business & Professions Code §§ 17200 et seq.; (2) violation of California's false advertising law ("FAL"), California Business & Professions Code §§ 17500 et seq.; and (3) violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 et seq.

She seeks (1) an injunction requiring Smart Balance to cease its misleading advertising practices; (2) a mandatory injunction requiring Smart Balance to conduct a corrective advertising campaign; (3) restitution of the amount by which Smart Balance has been unjustly enriched by its false advertising; and (4) a mandatory injunction requiring that Smart Balance destroy all misleading and deceptive materials and products.

## II.  DISCUSSION

### A.  Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a

---

4.  *Id.,* ¶¶ 6–7. See also *id.,* ¶ 61 ("SBI's Nucoa Real Margraine contains substantial and dangerous levels of artificial *trans* fat, which increases LDL cholesterol and decreases HDL cholesterol levels. SBI capitalizes on a common misperception of the relative importance of dietary cholesterol to fool consumers who are concerned about heart health, leading them to purchas[e] a produce that increases their LDL serum cholesterol, lowers their HSL serum cholesterol, and raises their risk for heart disease, diabetes, and cancer"). Much of the complaint recites scientific research establishing that trans fat causes adverse physical health effects. (*Id.,* ¶¶ 16–57.)

5.  *Id.,* ¶ 8. See also *id.,* ¶ 62 ("Nucoa Real Margarine is anything but 'healthy.' To the contrary, Nucoa Real Margarine is extremely high in *trans* fat, which causes heart disease, cancer, and type–2 diabetes, and therefore harms rather than benefits human health").

6.  *Id.,* ¶ 62.

7.  *Id.,* ¶ 79.

8.  *Id.,* ¶ 80.

cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir.1988). In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990).

The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mutual Insurance Co.,* 80 F.3d 336, 337–38 (9th Cir.1996); *Mier v. Owens,* 57 F.3d 747, 750 (9th Cir.1995). It need not, however, accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations. See *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("[B]are assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" are not entitled to an assumption of truth, quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see also *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir.2009) ("Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation").

To survive a motion to dismiss, plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. See also *id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.... Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief," ' " quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955); *Twombly,* 550 U.S. at 545, 127 S.Ct. 1955 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)). See also, e.g., *Moss,* 572 F.3d at 969 ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly* ).

**B. Whether the Court May Consider Documents Submitted with the Motion to Dismiss**

 In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and the documents attached thereto. *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). It may, however, consider documents that are incorporated by reference but not physically attached to the complaint if they are central to plaintiff's claim and no party questions their authenticity. See *Marder v. Lopez,*

450 F.3d 445, 448 (9th Cir.2006) (in ruling on a motion to dismiss for failure to state a claim "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion," citing *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir.1994), overruled on other grounds, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002)); (*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n. 5 (9th Cir.2003); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 n. 3 (2d Cir.2002)); see also *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir.2007) ("Review is generally limited to the contents of the complaint, but a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document," citing *Warren*, 328 F.3d at 1141 n. 5); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001) ("If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily relies' on them," citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.1998)); *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir.1999) ("[The incorporation by reference doctrine] permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading,'" quoting *Branch*, 14 F.3d at 454). "Moreover, a court 'need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice.'" *Anderson v. Fishback*, No. CV–05–0729–ROS (PC), 2009 WL 2423327, *2 (E.D.Cal. Aug. 2, 2009) (quoting *Lazy Y Ranch Ltd.*

*v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)).

Defendant cites a number of cases in which district courts have considered exemplars of purportedly false advertising in deciding motions to dismiss. In *Haskell v. Time, Inc.*, 857 F.Supp. 1392 (E.D.Cal. 1994), the district court considered certain mailings that formed the basis for claims of false advertising and unfair competition:

"Plaintiff does not deny that the exemplars, or virtually identical other mailings, are in his possession, are central to his claim, and are referred to in detail in the complaint. Rather, he argues that the exemplars are not the exact or only mailings on which he bases his claims and that they were handpicked by the defendants to succeed on their motions to dismiss. He suggests that he may have exemplars in which the challenged statements appear in a more misleading context or that such examples may turn up through discovery. But plaintiff does not provide any basis in fact for these conclusory assertions. He certainly had exemplars either identical or very similar to the ones provided by defendants when drafting the complaints. He has been on notice for some time—at least since the first status conference—that defendants intended to make this motion to dismiss based on exemplars. And he has provided no competing examples in which the context of the alleged misrepresentations is different from the exemplars. His hope that discovery will somehow turn up favorable examples is not sufficient to deprive defendants of their opportunity to avoid the burdens of discovery through a motion to dismiss.

\*      \*      \*

A ruling to the contrary would permit a plaintiff in a case such as this, involving allegedly misleading statements, to deprive the defendant of the opportunity to make a motion to dismiss based on

the context of the particular statements on the bare claim that there may be more damaging contexts. This would be inconsistent with case law that permits the court to decide as a matter of law whether allegedly misleading statements amount to mere 'puffery' or are factual claims on which a reasonable consumer could rely." *Id.* at 1397–98.[9]

■ Defendant submits the declaration of an executive at a Smart Balance subsidiary, GFA Brands, Inc ("GFA"), which attaches three labels for Nucoa that were in use during the class period. The declaration also attaches "all advertising for Nucoa Real Margarine circulated from January 1, 2000 to January 1, 2004 that could be located at this time."[10] The core problem with defendant's submission is that the authenticity of the labels is in dispute. In her opposition, plaintiff asserts that she has "had no chance to assess the authenticity of the newly proffered labels and advertisements thus far [and] should have a reasonable opportunity to assess their authenticity before the Court accepts them as fact."[11]

The *Haskell* court emphasized that the plaintiff there had notice at an early status conference of defendant's intent to present exemplars and move to dismiss on that basis. In this case, there is no record that Yumul had notice of Smart Balance's intent to use exemplars until the present motion was filed on June 21, 2010. By that time, defendant had requested and the court had granted a stay of all discovery. Although the court lifted the stay with respect to discovery concerning the labels on June 28, 2010, it is not reasonable to conclude that plaintiff had adequate time to complete discovery regarding the labels before July 6, 2010, the day on which her opposition to the motion to dismiss was due. Smart Balance seeks to take advantage of the rule articulated in *Haskell*— which is dependent on plaintiff's notice of defendant's intent to rely on exemplars and ability to investigate and discover the documents defendant intends to proffer to the court—while simultaneously asking the court to enter orders that prevent plaintiff from conducting discovery regarding these documents. It is unclear whether *Haskell*

9. Defendant also cites *In re Century 21–RE/ MAX Real Estate Advertising Claims Litigation*, 882 F.Supp. 915 (C.D.Cal.1994), in which the court considered "alleged false advertisements along with the pleadings" in deciding a motion under Rule 12(c) of the Federal Rules of Civil Procedure. *Id.* at 921. The *Century 21* decision did not describe the circumstances that led it to consider the advertisements, i.e., whether either party opposed consideration of them or questioned their authenticity. It is thus of little value in deciding the parties' dispute regarding the consideration of exemplars in this case. The same is true of *Dunlap v. Association of Bay Area Governments*, 996 F.Supp. 962, 964 (N.D.Cal.1998), which considered documents in deciding a motion to dismiss an Americans with Disabilities Act claim. In the final case cited by defendant, *In re Silicon Graphics, Inc. Securities Litigation*, 970 F.Supp. 746 (N.D.Cal.1997), the district court considered documents filed in connection with a motion to dismiss securities fraud claims. The court

rejected one declaration submitted *in camera* because it attached no documents referenced in the complaint. *Id.* at 758. It took judicial notice of, and alternatively accepted as incorporated by reference, other documents filed by the defendant with the Securities and Exchange Commission. The court noted that plaintiffs' fraud claims referenced the filings and that "[a]lthough plaintiffs do not cite to defendants' SEC forms in framing their insider trading allegations, the allegations can be derived only from those publicly-filed documents." *Id.* at 758–59. Finally, the district court declined to consider certain reports that were outside the scope of the pleadings and were relevant only to establishing a defense. *Id.* at 759.

10. Declaration of Peter Dray and Attached Exhibits in Support of Motion to Dismiss ("Dray Decl."), Docket No. 21 (June 21, 2010).

11. Opp. at 4 (footnote omitted).

survives subsequent Ninth Circuit decisions emphasizing that a court may consider only documents whose authenticity no party questions under the incorporation by reference doctrine. To the extent it does, however, the *Haskell* rule does not apply here given defendant's successful advocating of a discovery stay.

The court therefore declines to consider the Dray declaration and the documents attached thereto. As a result, defendant's arguments that plaintiff cannot prove there was fraudulent advertising prior to 2009 because in earlier years its labels did not include the word "healthy," and that plaintiff cannot establish reasonable reliance after late 2009 because she purchased margarine both when the label did and did not include the word "healthy" fail because they rely on facts not alleged in the complaint and not contained in any document that can be judicially noticed or that is properly considered under the incorporation by reference doctrine.

## C. Whether Plaintiff's Complaint Should Be Dismissed Because It Is Based on Conduct Outside the Applicable Limitations Period

Yumul alleges a class period commencing January 1, 2000 and continuing to the present. CLRA and FAL claims are subject to a three-year statute of limitations, while UCL claims are subject to a four-year statute of limitations. CAL. CIV. CODE § 1783 (establishing a three-year limitations period for CLRA actions); CAL. BUS. & PROF. CODE § 17208 (setting a four-year statute of limitations for actions under the UCL); CAL. C.C.P. § 338(a) (providing a default three-year statute of limitations for actions created by statute); *County of Fresno v. Lehman*, 229 Cal.App.3d 340, 346, 280 Cal.Rptr. 310 (1991) (applying § 338's three-year limitations period to an FAL claim).

■ "In a federal diversity action based on alleged violations of state law, the state statute of limitations controls." *Adams v. I–Flow Corp.*, No. CV09–09550 R(SSx), 2010 WL 1339948, *3 (C.D.Cal. Mar. 30, 2010) (citing *Bancorp Leasing and Financial Corp. v. Agusta Aviation Corp.*, 813 F.2d 272, 274 (9th Cir.1987)). As noted, plaintiff's complaint contains the following allegations regarding the tolling of the statutes of limitations on her respective claims:

> "Ms. Yumul did not discovery that SBI's labeling of Nucoa Real Margarine was false, deceptive, or misleading until late January 2010, when she learned of the causal links between Nucoa Real Margarine and coronary heart disease, type–2 diabetes, and cancer.
>
> Ms. Yumul is a reasonably diligent consumer who exercised reasonable diligence in her purchases, use, and consumption of Nucoa Real Margarine. Nevertheless, she would not have been and was not able to discover SBI's deceptive practices and lacked the means to discover those practices because, like nearly all consumers, she is not an expert on nutrition and does typically read or have access to those scholarly journals . . . where the scientific evidence on *trans* fat's dangers ha[ve] been published. Furthermore, SBI's labeling practices (in particular, falsely representing Nucoa Real Margarine as 'healthy' and good for cholesterol) have actively impeded [her] ability . . . to discover its fraud." [12]

Smart Balance argues that this allegation is factually insufficient to support tolling of the statute of limitations. It asserts that Yumul must allege sufficient facts to invoke either the delayed discovery or fraudulent concealment rules.

---

12. FAC, ¶¶ 79–80.

In its order on Smart Balance's first motion to dismiss, the court found that plaintiff had not adequately pled either delayed discovery or fraudulent concealment. The court noted that only fraudulent concealment and not delayed discovery could toll claims under the UCL because UCL claims "are subject to a four-year statute of limitations which beg[ins] to run on the date the cause of action accrued, not on the date of discovery." *Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.,* 285 F.3d 848, 857 (9th Cir.2002) (citing CAL. BUS. & PROF. CODE § 17208). In the amended complaint, plaintiff seeks to represent a CLRA and FAL class, with a class period beginning January 1, 2000, and a UCL class, with a class period beginning February 8, 2006, four years prior to the filing of this action.[13] Plaintiff now relies only on delayed discovery in support of her assertion that tolling is appropriate.[14]

■ "In order to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litigation,* No. C–05–04726 RMW, 2008 WL 4544441, *8 (N.D.Cal. Sept. 30, 2008) (quoting *Saliter v. Pierce Bros. Mortuaries,* 81 Cal.App.3d 292, 296, 146 Cal.Rptr. 271 (1978)). See also *E–Fab, Inc. v. Accountants, Inc. Services,* 153 Cal.App.4th 1308, 1319, 64 Cal.Rptr.3d 9 (2007) ("A plaintiff whose complaint shows on its face that his claim would be barred without the

benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer," quoting *McKelvey v. Boeing North American, Inc.,* 74 Cal.App.4th 151, 160, 86 Cal. Rptr.2d 645 (1999)). See also *Keilholtz v. Lennox Hearth Products Inc.,* No. C 08–00836 CW, 2009 WL 2905960, *3 (N.D.Cal. Sept. 8, 2009) ("To invoke the delayed discovery rule, the plaintiff must plead facts showing: '(a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when he did actually discover the [facts underlying the claim],'" quoting *General Bedding Corp. v. Echevarria,* 947 F.2d 1395, 1397 (9th Cir. 1991)). As the *McKelvey* court recognized, this rule applies even where plaintiff is prosecuting a class action. See *McKelvey,* 74 Cal.App.4th at 160–61, 86 Cal. Rptr.2d 645 (applying the standard to a class action).

Yumul alleges that in late January 2010 she learned of a causal link between Nucoa and coronary heart disease, type–2 diabetes, and cancer. She asserts that the connection between the ingredients in Nucoa and these purported negative health effects is not known to the general public, that she did not have access to scholarly publications that detailed scientific information suggesting such a link, and that the statements on the Smart Balance packaging did not put her on notice that she should make inquiry.[15] Defendant attacks the sufficiency of this pleading in four brief

---

**13.** FAC, ¶¶ 69–70.

**14.** The title of the tolling section in the FAC is "Additional Tolling Allegations (Delayed Discovery of FAL and CLRA Claims)." More-

over, plaintiff's opposition brief addresses only delayed discovery.

**15.** In its reply, defendant references paragraphs in the complaint that in turn reference the report of an advisory committee of the

paragraphs at the end of its motion. It cites no law in support of its position.

■ Defendant asserts, *inter alia*, that allegations of delayed discovery are subject to the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. The court's order on the first motion to dismiss held only that Rule 9(b) applies to the pleading of fraudulent concealment. Given that the rule concerns no allegations of "fraud or mistake," and given that neither fraud nor mistake is required to prove delayed discovery, the court concludes that Rule 9(b) does not apply. Indeed, the court has found no decision applying Rule 9(b) to the pleading of delayed discovery. Rather, in a thoughtful and lengthy opinion, Judge Oliver Wanger of the Eastern District of California considered whether a heightened pleading standard applied to allegations of delayed discovery and concluded that it did not. *Bonds v. Nicoletti Oil, Inc.*, No. CV–F–07–1600 OWW/DLB, 2008 WL 2233511, *5–6 (E.D.Cal. May 28, 2008).[16] The court finds this decision, and the absence of any contrary authority, persuasive and concludes that Rule 8(a)(2), not Rule 9(b), applies to the pleading of delayed discovery.

■ Plaintiff's complaint contains a "short and plain statement" that she is a

U.S. Department of Health and Human Services and Department of Agriculture and a report of the American Heart Association. (FAC, ¶¶ 26–28, 38.) As regards the 2005 advisory committee report, the court has no information before it that would allow it to infer that consumers in general, and plaintiff in particular, was contemporaneously aware of the report and its findings regarding trans fat. The American Heart Association report appears to have been published in a medical journal titled *Circulation*. Once again, however, the court has no information regarding the journal's availability to the public or whether a reasonably diligent consumer would research articles found in this type of journal. The court cannot infer, as defendant would have it do, that because plaintiff cites these references in the complaint, they were known to her and/or widely known to consumers in the putative class at the time they were published. Such a fact is outside the record that controls decision of this motion to dismiss.

**16.** Judge Wanger relied on the Supreme Court's decision in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512–514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), in which the Court rejected application of a heightened pleading standard in employment discrimination cases because it would conflict with Rule 8(a)(2)'s mandate that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz* noted that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake." The Court observed that it had "declined to extend such exceptions[, including Rule 9(b),] to other contexts." *Id.* at 513, 122 S.Ct. 992. Judge Wanger noted that following *Swierkiewicz*, Ninth Circuit cases that required plaintiffs alleging delayed discovery to satisfy California's pleading standard were arguably incorrect. He concluded, however, that *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir.1995), which required that plaintiff comply with the California standard and allege specific facts establishing that the delayed discovery exception applied, remained the law of the circuit. *Bonds*, 2008 WL 2233511 at *6. Although Judge Wanger's opinion primarily addressed whether, following *Swierkiewicz*, a federal court could compel compliance with a state court pleading standard, implicit in his decision is the notion that Rule 9(b) does not apply to allegations of delayed discovery. Stated differently, Judge Wanger believed that requiring a federal plaintiff to plead (1) the time and manner of discovery and (2) the inability to have discovered a claim earlier despite reasonable diligence, if anything, imposed a higher pleading burden on plaintiff than Rule 8(a) and *Swierkiewicz* mandated. Defendant's argument that still more is required is not supported by Rule 9(b), by *Swierkiewicz*, or by Judge Wanger's decision in *Bonds*.

layperson who is not familiar with the literature regarding the hazards of trans fat and that her lack of inquiry was reasonable because the product label indicated that the margarine was healthy and cholesterol free and did not mention trans fat. This suffices to allege inability to have discovered the facts earlier despite reasonable diligence.[17] As respects the time and manner of discovery, plaintiff has alleged the time at which she discovered the facts underlying her claim, but not the *manner* of her discovery. Specifically, Yumul has alleged that she discovered the pertinent facts in late January 2010. She does not describe how or in what manner she came to discover them. See *McKelvey*, 74 Cal.App.4th at 160–61, 86 Cal. Rptr.2d 645 ("None of the complaints ... are sufficient because none of them disclose the time or manner of discovery by any plaintiff"); *Unruh–Haxton*, 162 Cal. App.4th at 363, 76 Cal.Rptr.3d 146 (2008) ("The *McKelvey* court held the complaints inadequately pled facts to establish delayed discovery because the plaintiffs failed to disclose the time and manner of discovery").

■ A plaintiff seeking to take advantage of the delayed discovery rule must plead "the time and *manner* of discovery." *E–Fab*, 153 Cal.App.4th at 1319, 64 Cal. Rptr.3d 9 (emphasis supplied). In other words plaintiff must allege "[h]ow and when [s]he did actually discover the fraud or mistake." *Keilholtz*, 2009 WL 2905960 at *3. Because Yumul has not alleged in any form the manner of her discovery, her

---

17. Defendant's argument regarding the publicity surrounding the health risks of trans fat incorporates facts outside the pleading. While defendant correctly notes that the first amended complaint references trans fat bans in New York and elsewhere (FAC, ¶ 52), it does not suggest that there were "well publicized report[s]" of the bans (Reply at 7). Consequently, the fact that such reports may have been published constitutes a fact outside the pleadings that cannot be considered in deciding this motion. Similarly, although the first amended complaint references a 2008 law banning trans fat, it notes that the law did not take effect until January 1, 2010 (FAC, ¶ 51). Additionally, defendant's assertion in reply that the ban was publicized (Reply at 7) constitutes a fact outside the record. "The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. County of Los Angeles*, 159 Cal. App.4th 42, 61, 71 Cal.Rptr.3d 415 (2008). Publicity concerning the banning of trans fat in restaurants may be relevant at the summary judgment stage because it may bear on "when the plaintiff ha[d] notice or information or circumstances [sufficient] to put a reasonable person on inquiry." *In re Blowitz*, 186 Cal.App.4th 371, 378, 112 Cal.Rptr.3d 62 (2010). See also *S.M. v. Los Angeles Unified School District*, 184 Cal.App.4th 712, 717, 109 Cal.Rptr.3d 270 (2010) ("A plaintiff has reason to discover a cause of action when he or she has reason to at least suspect a factual basis for its elements. Suspicion of one or more of the elements, coupled with knowledge of any remaining elements, will generally trigger the applicable limitations period"). Defendant cites no factual allegation in the complaint that compels the conclusion Yumul suspected or knew the facts underlying her causes of action more than three years before filing this action.

The court notes, moreover, that defendant's contention was recently rejected in *Unruh–Haxton v. Regents of University of California*, 162 Cal.App.4th 343, 76 Cal.Rptr.3d 146 (2008). There, the court held that "public awareness of a problem through media coverage alone [cannot] create[ ] constructive suspicion for purposes of [the delayed] discovery [rule]." *Id.* at 364, 76 Cal.Rptr.3d 146. Thus, "[t]he statute of limitations does not begin to run when some members of the public have a suspicion of wrongdoing, but only 'once the plaintiff *has* a suspicion of wrongdoing.'" *Nelson v. Indevus Pharmaceuticals, Inc.*, 142 Cal.App.4th 1202, 1206, 48 Cal.Rptr.3d 668 (2006) (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1111, 245 Cal. Rptr. 658, 751 P.2d 923 (1988) (emphasis original))

complaint does not adequately plead tolling under the delayed discovery rule. Given that other deficiencies in the original complaint have been cured, however, the court grants plaintiff a final opportunity to replead by filing, no later than fourteen days after the date of this order, an amended complaint that alleges the *manner* in which plaintiff discovered the facts underlying her causes of action.

## III. CONCLUSION

For the reasons stated, the court grants defendant's motion to dismiss without prejudice insofar as it seeks to dismiss claims that predate the limitations period. Plaintiff is directed to file no later than fourteen days after the date of this order an amended complaint that alleges the manner in which plaintiff discovered the facts underlying her claims. Defendant's motion to dismiss is otherwise denied.