Filed 12/30/22  Strickland v. Strickland CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARK STRICKLAND, | D079934 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2019-00042920-CU-OR-CTL) |
| GAIL STRICKLAND, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Reversed.

Levinson Arshonsky & Kurtz and Richard I. Arshonsky for Plaintiff and Appellant.

The Law Office of Michael A. Alfred and Michael A. Alfred for Defendant and Respondent.

This appeal involves a longstanding dispute between siblings Mark and Gail Strickland over claims to a family home and the proceeds of its sale. Their disagreement culminated in an August 2019 lawsuit in which Mark sued Gail for breach of contract and fraud.

Mark appeals from a judgment of dismissal after the trial court granted summary judgment for Gail on statute of limitations grounds. On independent review, we conclude that Mark's claim to proceeds from the sale in 2019 of the family residence is not time-barred as a matter of law. Accordingly, we will reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1969, Mark and Gail's mother, LaVina, became the sole owner of residential property in Chula Vista (the Property). About 11 years later, LaVina executed two quitclaim deeds to Gail. The first, which transferred the Property to herself and to Gail, was recorded on December 31, 1980. The second, which conveyed LaVina's remaining interest to Gail, was not recorded until November 2003.

There was conflicting evidence about LaVina's intent in deeding the Property to Gail. That factual dispute is not a material one for resolving the statute of limitations issues, but it does explain how brother and sister came to this point.

Mark maintains that LaVina actually intended he and Gail share equally in the Property. He asserts their mother quitclaimed the Property to Gail to protect it against a creditor's claim. According to Mark, LaVina did not include him on the 1980 deed because he was only 20 years-old at the time, and Gail mistakenly believed had to be at least 21 to acquire an interest in real property.

2

Gail agrees that their mother intended to treat her children equally. But she contends LaVina did so by giving Mark shares of stock, and giving her the Property. Indeed, Gail maintains that Mark actually got the better of the two gifts. In 2017 she wrote to Mark, "The truth is[,] unlike the stock you received from Mom that was an asset[,] the house has been a liability. It has been a financial drain for years."

In any event, viewing the evidence in the light most favorable to Mark[1]—over the ensuing years Gail assured Mark that notwithstanding the state of title, he would share equally in the Property. For example, before leaving overseas in 2000, Gail executed (but did not record) a quitclaim deed to Mark, LaVina, and Gail's then-husband. She left instructions that the deed would become effective if she died while out of the country. Also around 2000, Gail and Mark orally agreed that in exchange for his work repairing the Property, she would "protect [his] interest" as "co-owner." In a September 2002 e-mail, Gail assured Mark that he "will always be taken care of so please do not worry."

But despite these assurances, in September 2002 Mark discovered that Gail had used the Property to secure a personal loan. He then "realized" that Gail considered the Property her own, not a "family asset."

As is not uncommon in family disputes, the impact of harsh words exchanged in 2002 faded over time. In November 2005, Gail told Mark she was "setting up a trust for Mom" and he was "part of that trust."[2] She

---

[1] *Gund v. County of Trinity* (2020) 10 Cal.5th 503, 507, fn. 2 (on summary judgment, "we view the evidence in the light most favorable to plaintiff[ ] as the losing part[y], resolving evidentiary doubts and ambiguities in [his] favor").

[2] In September 2003, a conservator was appointed for LaVina.

3

offered to "change the deed" to include Mark and add him as an obligor on the financing. In July 2007, Gail sent an e-mail to her step-sister stating that Mark "will get half the house" and he "deserves that."[3] But despite these representations, Gail did not convey any interest in the Property to Mark. On the other hand, neither did he consent to being added on the mortgage.

After simmering for nearly a decade, the dispute over the Property boiled over in 2016. Gail claimed that Mark had done virtually nothing to help repair or maintain the Property and, despite his claims of co-ownership, never paid a penny on the mortgage. In an e-mail to Mark she rhetorically asked, "Where were you when the house could not be rented and the bills still had to be paid[?]"

Mark replied on May 20, 2016, stating he was "getting screwed." He asked, "Why in the world would I make a mortgage payment if I'm not on the loan or the title? Why would I contribute one dime to *your* debt when you've given me no documentation of my interest in the property or what this debt is for? Are you nuts?" "Where was my grant deed? Where was my partnership agreement? Where was my Quit Claim [*sic*] [d]eed? Where was my RENT?"

Mark's May 20, 2016 e-mail ends by demanding that Gail send him copies of loan papers, leases, tax forms and other documents related to the Property. It concludes with this ultimatum:

> "Please send me all these documents I have requested and answer all my questions above within 30 days (by June 20th) *or it's Game On*!" (Italics added.)

Gail did not comply. Shortly after the deadline (on June 30, 2016) she replied in an email that began, "You are not my Brother[,] you are a

---

[3] Gail contends this was part of her estate plan, not an acknowledgment that Mark had a present interest in the Property.

4

monster." She asked Mark to "stay away" while she attempted to resolve her pending divorce.

Still, the siblings continued to spar. In December 2016, Mark asked Gail to sign a quitclaim deed giving him a 50 percent interest in the Property; she refused. A year later, Gail proposed meeting with a mediator to resolve the dispute.

Finally, on August 16, 2019, Mark filed a superior court complaint against Gail for quiet title and declaratory relief. In it he claimed a 50 percent ownership interest in the Property. Shortly thereafter, Gail sold the Property. The parties agreed to hold the sales proceeds in Gail's attorney's trust account pending resolution of the lawsuit.

After a demurrer was sustained with leave to amend, Mark abandoned his quiet title claim. After another demurrer was sustained to his first amended complaint, he filed a second amended complaint (Complaint)—the operative pleading here—alleging (1) fraud, (2) negligent misrepresentation, (3) breach of an oral contract, and (4) constructive trust. By then, LaVina had died and Gail had sold the Property.

Gail moved for summary judgment, or in the alternative, summary adjudication of each cause of action on statute of limitations grounds.[4]

---

4       Alternatively, Gail sought summary judgment/adjudication on the grounds that "Mark has failed to properly plead" or "prove" that "he failed to discover any fraud perpetrated by Gail within three years prior to the filing of the complaint." In related arguments, she asserted that the other deceit causes of action and the contract claim "do not satisfy all of the required elements." However, any claimed pleading defects were resolved against Gail when the court overruled her demurrer, and a motion for summary judgment is not the appropriate device for challenging that ruling. Moreover, as discussed later, Mark's causes of action ultimately rest on Gail's refusal to share the proceeds of the sale of the Property in 2019. Because that is when the claim accrued, no facts establishing reasonable delay were required to be

5

Based almost entirely on the parties' e-mails, the court determined that in 2002, Mark had a "strong belief" that he was "wronged regarding ownership of the house." Then in May 2016, "a date more than three years before filing his lawsuit against Gail, Mark wrote another angry e-mail to Gail" stating among other things, " 'You have not put a trust in place for me Gail . . . . Stop again with the bullshit.' " Applying a three-year limitations period for fraud, negligent misrepresentation, and imposition of a constructive trust based upon fraud, and a two-year period for breach of oral contract, the court granted summary judgment in favor of Gail.

## DISCUSSION

A.    *The Breach of Contract Cause of Action is Not Time-Barred*

Civil statutes of limitations " 'protect defendants from the necessity of defending stale claims and require plaintiffs to pursue their claims diligently." (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 941.) They are " 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' " (*Romano v. Rockwell International, Inc.* (1996) 14 Cal.4th 479, 488 (*Romano*).)

Statute of limitations issues typically turn on resolving disputed facts; however, summary judgment may be appropriate where " 'the uncontradicted

---

pleaded or set forth in opposing summary judgment, nor is any such promise too uncertain to be enforced.

6

facts . . . are susceptible of only one legitimate inference.' " (*State Compensation Ins. Fund v. Superior Court* (2010) 184 Cal.App.4th 1124, 1132.) On appeal from summary judgment, we independently review the record that was before the trial court. (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168,178.)

"A cause of action for breach of contract ordinarily accrues at the time of the breach, and the statute begins to run at that time regardless of whether any damage is apparent or whether the injured party is aware of his or her right to sue." (3 Witkin, Cal. Procedure (6th ed. 2021) Actions § 567(1).) To determine "the time of an alleged breach for purposes of the statute of limitations, it is necessary to establish what it was the defendant promised to do . . . and when [her] conduct diverged from that promise." (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 958, italics omitted.)

Mark's complaint alleges that "in or about 2000," Gail agreed to "protect [his] interest in the Property by treating [him] as a co-owner of the Property." That is the alleged promise. Mark's e-mail of May 20, 2016 indicates that in some respects, Gail's conduct had diverged from that promise, stating:

> "Where was my Grant Deed? Where was my partnership agreement? Where was my Quit Claim [*sic*] Deed? Where was my RENT? [¶] . . . [¶]
>
> "You have not put a Trust in place for me Gail. If you have set up a Trust, why haven't you sent me any documentation on this either?"

But Mark asserts that Gail ultimately breached the agreement in 2019 when she sold the Property and kept all the proceeds. Indeed, Mark argues that he did not suffer harm until October 2019 when Gail insisted she alone

7

was entitled to the sales proceeds. He maintains that Gail agreed to "share the Property with him, by title or sharing in its benefits"—and since that would include the sales proceeds—his cause of action did not accrue in 2019 when the Property was sold and Gail sought to retain all the net proceeds.

We agree. The evidence created a triable issue that Gail breached the alleged oral agreement by not sharing the proceeds of sale with Mark. Because that did not occur until 2019, his complaint filed in August 2019 is clearly within the two year limitations period for breach of an oral agreement. (Code Civ. Proc.[5], § 339, subd. (1).)

B.    *The Fraud and Misrepresentation Causes of Action are Not Time-Barred*

The statute of limitations for fraud is three years (§ 338, subd. (d)), and for negligent misrepresentation is two years (§ 339, subd. (1)). Under the delayed discovery doctrine, which is built-into the statute of limitations for fraud, a cause of action does not accrue until the plaintiff discovers, or has reason to discover, the cause of action. (*Fox v. Ethicon Endo–Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*).)

"A plaintiff has reason to discover a cause of action when he or she has reason to at least suspect a factual basis for its elements. Suspicion of one or more of the elements, coupled with knowledge of any remaining elements, will generally trigger the applicable limitations period." (*S.M. v. Los Angeles Unified School Dist.* (2010) 184 Cal.App.4th 712, 717 (*S.M.*).) "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, [they] must decide whether to file suit or sit on [their] rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts . . . ." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111.) We look to whether the

---

[5]    Undesignated statutory references are to the Code of Civil Procedure.

plaintiff has "reason to at least suspect that a type of wrongdoing has injured [him]." (*S.M.*, at p. 717.)

The Complaint alleges that Gail falsely represented that (1) he would "share equally in the Property"; (2) she had a deed naming him as grantee; and (3) she would refinance the Property, put him on the loan, and change the deed. As noted above, there is a triable issue that Gail's alleged misrepresentation about Mark's rights to share in the sales proceeds did not come to fruition until October 2019. Accordingly, the claim that Gail fraudulently misrepresented her intention to share the sales proceeds is not time barred as a matter of law.

## C.   *The Constructive Trust Theory is Not Time-Barred*

A constructive trust is an equitable remedy that compels a wrongdoer to transfer property to its rightful owner. (See *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1485.) An action seeking a constructive trust is subject to the limitation period of the underlying substantive right. "If that substantive right is barred by the statute of limitations, the remedy necessarily fails." (*Embarcadero Mun. Improvement Dist. v. County of Santa Barbara* (2001) 88 Cal.App.4th 781, 793.)

Here, the fourth cause of action alleges that "as a result of Gail's conduct and the facts set forth . . . Gail holds all or a portion of the [s]ales [p]roceeds as a constructive trustee . . . ." Because the underlying substantive causes of action are not time-barred, the trial court erroneously dismissed the claim for this remedy.[6]

---

[6]   In light of this disposition, it is unnecessary to consider Mark's additional contentions that the trial court abused its discretion in (1) sustaining certain evidentiary objections, and (2) disregarding claimed defects in Gail's separate statement of undisputed material facts.

## DISPOSITION

The judgment is reversed.  Appellant is entitled to costs on appeal.


DATO, J.

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.