Filed 7/23/14  KIug v. City of Laguna Beach CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TRACE KLUG et al., | |
| Plaintiffs and Appellants, | G048554 |
| v. | (Super. Ct. No. 30-2013-00623828) |
| CITY OF LAGUNA BEACH, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Charles Margines, Judge.  Affirmed.

Wentworth, Paoli & Purdy and Court B. Purdy for Plaintiffs and Appellants.

Rutan & Tucker, Philip D. Kohn, Peter J. Howell and Ann Levin for Defendant and Respondent.

\*        \*        \*

INTRODUCTION

Trace Klug and Robert Klug and their minor children, Makayla Klug and Spencer Klug (the Klugs), submitted claims against the City of Laguna Beach (the City) for personal injury and real property damage.[1]  The Klugs claimed they suffered health problems and diminution in the value of their home due to diesel exhaust fumes from the City-owned fire station next door to their home.  The City rejected the Klugs' claims as untimely and denied their application for permission to file a late claim.

After a hearing, the trial court denied the Klugs' petition for relief to file a late claim.  We affirm.  Neither the delayed discovery doctrine nor the doctrine of estoppel applies in this case.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In 2004, the Klugs moved into a residence on Second Avenue in the City.  Their residence was located next door to a fire station owned and operated by the City; the fire station has been in continuous operation since 1953.  From shortly after the Klugs moved into the residence until December 2011, Trace and Robert complained to the City and its employees that diesel exhaust fumes from the fire station were causing them harm.

On September 26, 2012, the Klugs presented four separate claims—one on behalf of each member of the family—against the City, pursuant to Government Code section 810 et seq.  (All further statutory references are to the Government Code.)  Each averred that his or her damage or injury occurred "since approximately June 2004."  On October 4, the City responded to the Klugs' claims as follows:  "The portion of the claim alleging personal injury or personal property damage that occurred more than six months prior to September 26, 2012, as required by law, is being returned as untimely, as is the

---

[1]  As appropriate, we will refer to the Klugs by their first names for clarity.  We intend no disrespect.

2

portion alleging real property damage that occurred more than one year prior to September 26, 2012. . . . Because those portions of the claim were not presented within the time allowed by law, no action was taken on those portions." The City advised the Klugs that their only recourse was to apply for leave to present a late claim.[2]

On October 9, 2012, the Klugs submitted an application to the City for permission to file a late claim. The City rejected the application. The Klugs then filed a petition in the trial court for relief to file a late claim. The City filed an opposition to the petition. After a hearing, the trial court denied the petition. The Klugs timely appealed.

DISCUSSION

I.

*STANDARD OF REVIEW*

We review the denial of a petition for relief to file a late claim against a public entity for abuse of discretion. (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275.)

II.

*DELAYED DISCOVERY*

The limitations period for claims against a public entity is set forth in section 911.2, subdivision (a): "A claim relating to a cause of action . . . for injury to person or to personal property . . . shall be presented . . . not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action." An

---

[2] The City, in a separate letter, advised the Klugs their claims were insufficient because they failed "to provide more specific dates and circumstances [within the relevant time periods] that give rise to the claims" and injury, loss, or damages, and gave them an opportunity to amend their claims to rectify the insufficiencies. The Klugs did not attempt to amend their claims.

application for relief from the requirements of section 911.2 may be presented to the public entity "within a reasonable time not to exceed one year after the accrual of the cause of action." (§ 911.4, subd. (b).) The one-year extension applies to both adult and minor claimants. (§ 911.4, subd. (c)(1); *V.C. v. Los Angeles Unified School Dist.* (2006) 139 Cal.App.4th 499, 508.)

"A cause of action ordinarily accrues when the wrongful act occurs, the liability arises, and the plaintiff is entitled to prosecute an action." (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 66.) The Klugs' claims against the City, on their face, alleged their causes of action accrued "since approximately June 2004."

The Klugs nevertheless claim the delayed discovery rule makes their claims timely. This rule was explained by the court in *S.M. v. Los Angeles Unified School Dist.* (2010) 184 Cal.App.4th 712, 717: "Under this doctrine, a cause of action does not accrue until the plaintiff discovers, or has reason to discover, the cause of action. [Citation.] A plaintiff has reason to discover a cause of action when he or she has reason to at least suspect a factual basis for its elements. Suspicion of one or more of the elements, coupled with knowledge of any remaining elements, will generally trigger the applicable limitations period. [Citation.] This refers to the 'generic' elements of wrongdoing, causation, and harm and does not require a hypertechnical approach. Instead, 'we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.' [Citation.]" In order to rely on the delayed discovery rule, the plaintiff must "'show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1536.)

The evidence before the trial court showed the Klugs suspected they had been harmed by the diesel exhaust fumes from the fire station long before the date on which they filed their claims. (*Miller v. Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1623-1624 [the plaintiff's awareness of mold and belief that it had

4

caused a temporary worsening of her symptoms caused her claim to accrue, despite the fact the claim was for much more severe damage].)  In their declarations in support of the petition for relief to file a late claim, Trace and Robert declared:

1.  They lived next door to the fire station from June 15, 2004 to August 31, 2012.

2. "During [their] tenancy at this home," the Klugs "began to suffer from many strange, non pre-existing and difficult to diagnose medical issues."

3.  "In the latter part of 2011, . . . [Trace] was concerned about diesel exhaust in general but did not suspect that Makayla and the rest of [the] family's medical issues were related to exposure to diesel exhaust or the proximity to the fire station."

4.  "From October to December 2011, . . . [Trace] did not believe or suspect that [her] deteriorating health or that of [her] family was being directly caused by living next to Fire Station 4 but [she] was concerned that increased exposure to excessive diesel fumes could make these conditions worse."  Robert did not share Trace's concerns "and did not believe that there were any health and safety issues with respect [to] our living next to the Fire Station."

5.  After the Klugs moved out of their home, Trace and Robert began to suspect that their family's health problems were caused by exposure to diesel exhaust fumes because their children's health conditions began to improve and all the Klugs felt much better.

Trace's contemporaneous verbal and written statements, however, showed the Klugs did, in fact, suspect the diesel exhaust fumes were a cause of their injury long before moving out of their home.  As early as 2006, Trace complained to the City's fire chief, Jeff Latendresse, "about diesel exhaust from the Fire Station allegedly invading her home and harming her family."  In March 2009, Trace told Fire Captain Bobby Scruggs, "the diesel fumes invading her home . . . w[ere] harmful for her family but mostly to her

5

children."  In April 2009, then Fire Chief Mike Macey wrote a letter to Trace to address the concerns she had expressed regarding, among other things, diesel exhaust fumes.

In an e-mail to the City's city manager and then fire chief on October 5, 2011, Trace wrote:  "Our 10 yr old has possible MS, with optic neuritis and MS type lesions on her Cerebellum which is extremely rare for her age with chronic debilitating headaches.  My son and myself also suffer from headaches, *all of us have these headaches, triggered by smoke and gas fumes*.  [¶] . . . [¶] My husband and I are highly educated and I am a Pediatric, Neonatal Nurse, so *we are aware of the danger you are putting our kids in.  My daughter*[']*s Neurologist and Pediatrician both agree that the toxic fumes from the station 4 being so close to our home can easily help trigger an autoimmune reaction and headaches*.  [¶] This will be our last personal request before our attorney, Matthew Tonkovich pursues legal action."  (Italics added.)

An e-mail from Trace, on November 8, 2011, to members of the City Council read:  "I have a serious request regarding Fire Station #4.  The Fire truck is so old and run down that *dangerous diesel exhaust is being blown into our family's home multiple times a day and is causing serious headaches, allergic reactions and long term damaging effects on our family.  My daughter has chronic severe migraine headaches and has either the early stages of MS or another autoimmune problem that her doctors are monitoring.  She is only able to go to school part time because of these headaches and the fire engine exhaust is a trigger.  I also have terrible headaches if I breathe in the exhaust from the fire truck*.  We have to run in to the house if the truck is moving and close the front door as fast as we can so we don't breathe the fumes because the truck is so close to our home.  We need a new environmentally friendly fire truck not only for my family's health but for the firefighters['] health.  The fire station needs to be rebuilt or moved so that it is up to modern fire safety standards, so that the truck can go in and out as well without having to drive on our neighbors['] property, and blow exhaust into our home each time.  We have an attorney, Matthew Tonkovich, who knows the situation and

6

Makayla's Pediatrician, Frances Duda, and Neurologist, Andrew McIntosh, are also ready to help our situation. We can not move because we bought the house at the peak of the market. The noise has not been the problem for us, *it*[']s *the diesel exhaust that we have become more and more sensitive to over the years. I just hope it is not to*[*o*] *late to prevent other health problems like cancer, for my family*." (Italics added.)

Trace sent another e-mail to the City Council members on December 29, 2011, stating: "I wanted to follow up on my email from last time and let you know that *I have done more research on the toxic effects to children from diesel exhaust*. The day [M]akayla[']s headaches became severe again was when the turbo was out on the truck and the diesel was even worse than usual, they were so severe that her MD sent her to [Children's Hospital of Orange County] again in case more [MS] symptoms were starting—thankfully we switched headache meds. [M]akayla has had serious health issues—optic neuritis which is very rare for kids—causing damage for her fine ocular balance skills, possible MS or another chronic inflammation problem as well as an allergen ca[u]sing bags under her eyes, chronic cough, headache. [W]e have spent 2 years trying to figure out the cause—dr duda believes it[']s an allergic response to something causing headache etc. we all also get a lot of sinus colds at least once a month, my son had to have tonsils/adenoids out. I have had 2 sinus surgeries and also have had shingles 6 times in this house and serious widespread inflammation also causing early degenerative arthritis in my ne[c]k and jaw and fibromyalgia. [M]akayla and myself have to take strong headache medication and daily [M]otrin for chronic inflammation. [¶] My neighbor . . . moved and rent out . . . their house next door because of the noise, shaking and diesel fuel of the truck. [T]heir daughter had severe allergies living next door as well and she sent many complaints to you a few years ago and I wish I would have helped her because the long term effects on our family has been devastating. [*W*]*e all have or have had serious health problems easily related to exposure to diesel and our doctors agree that it is definitely a good possibility* and they have all been documented

7

now in our doctors files. [O]ur medical bills for the last 5 yrs are easily $100,000. . . . [¶] *I am absolutely positive that the . . . diesel exhaust that we smell in our house is harming us* and we need that truck moved now. . . . [¶] I have called for years . . . but never in writing because my parents are both attorneys and said I would have to disclose to someone trying to buy our house." (Italics added.)

In a reply declaration in support of the petition for relief to file a late claim, Trace disclaimed her statements in the October 2011 and December 2011 e-mails that the diesel exhaust fumes from the fire station were the cause of her family's injuries. Trace claimed she made those statements in an effort to get the City to take her complaints seriously, not because they were true.[3]

Trace's reply declaration also notes the earlier communications with the City and its employees regarding the diesel exhaust fumes at the fire station never "make[] . . . reference to me making a complaint that diesel fumes w[ere] causing actual injury or harm to me or to my family."

The overwhelming evidence before the trial court supported the finding the delayed discovery doctrine did not toll accrual of the Klugs' claims and the conclusion the petition for relief to file late claims should be denied. The Klugs focus on Trace's October 5, 2011 e-mail, and contend that using that e-mail as the benchmark shows their claims were filed only four days late. But the evidence shows the Klugs had a reasonable suspicion of the connection between their health problems and the diesel exhaust fumes well before that date. Actual knowledge is not the test—the Klugs' "'suspicions were undeniably aroused'" more than one year before the petition for relief was filed. (*Reyes v. County of Los Angeles* (1988) 197 Cal.App.3d 584, 592.)

---

[3] The trial court did not believe Trace's disclaimer.

## III.

### *ESTOPPEL*

The Klugs argue the City should be estopped from raising the statute of limitations to block their claims because the City's employees made material misrepresentations to the Klugs. The estoppel doctrine in this context was explained by the court in *Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1064: "'A public entity may be estopped from asserting the limitations of the tort claims statutes where its agents or employees *have prevented or deterred the filing of a timely claim by some affirmative act*. The required elements for an equitable estoppel are: (1) the party to be estopped must be apprised of the facts; (2) the party to be estopped must intend his or her conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) the other party must rely upon the conduct to his or her injury. [Citation.]' [Citation.]"

The Klugs do not argue the City or its employees or representatives induced them not to file a timely claim against the City.[4] What the Klugs argue is the misrepresentation of facts regarding the dangerousness of the diesel exhaust fumes from the fire station prevented them from further investigating whether there was a causal connection between those fumes and their family's health problems. There are two fundamental problems with this argument.

First, once the Klugs had reason to suspect their health problems were caused or worsened by the diesel exhaust fumes, their claims against the City accrued, and later misrepresentations could not change such accrual. (*Reyes v. County of Los*

---

[4] Such a claim would be meritless. A public entity cannot be estopped from relying on the statute of limitations by denying liability or disputing the claimant's factual allegations. (See *Tyus v. City of Los Angeles* (1977) 74 Cal.App.3d 667, 673.)

9

*Angeles*, *supra*, 197 Cal.App.3d at p. 595 ["Concealment does not toll accrual once discovery has occurred"].)

Second, the trial court excluded all of the evidence on which the Klugs rely to establish the City's employees and representatives made material misrepresentations or concealed the true facts. That ruling by the trial court is not challenged on appeal.


IV.

*MINOR CHILDREN'S CLAIMS*

The Klugs argue the trial court abused its discretion by failing to provide relief to the minor children. They fail, however, to explain why the minor children's claims should be treated differently from those of Trace and Robert. Section 911.4, subdivision (c)(1) provides the one-year limitation for an application to the public entity for leave to file a late claim applies to minors: "In computing the one-year period under subdivision (b), . . . [¶] . . . [t]he time during which the person who sustained the alleged injury, damage, or loss as a minor shall be counted." The statutory exceptions for minors who have been adjudged to be dependents of the juvenile court (§ 911.4, subd. (c)(2) & (3)), or who are mentally incapacitated and do not have an appointed guardian or conservator (§ 911.4, subd. (c)(1)), are not applicable here.


V.

*DAMAGE TO REAL PROPERTY*

The Klugs argue the trial court abused its discretion by failing to provide relief to them based on the claims for damage to real property. The Klugs contend they had no claim for diminution in the value of their real property until the property was sold in July 2012. A claim for diminution in the value of real property may be asserted before the property is sold, however. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 290, 294 [damages awarded for estimated decline in property's market value due to odors

from the defendant's nearby sewage plant].) Additionally, the Klugs failed to show they had a statutory right to petition for relief to file a late claim as to their real property claims. As the City points out, a petition for relief to the trial court follows on the denial of an application for leave to present a claim, pursuant to section 911.4. Section 911.4 only authorizes an application for leave to file a late claim for claims subject to the six-month statute of limitations, meaning only claims for personal injury or personal property damages are eligible.

## VI.

### *ALLEGED VIOLATIONS OF SECTIONS 910.8 AND 911.8*

Finally, the Klugs raise two procedural arguments regarding the City's denial of their claims and the application to file a late claim. First, the Klugs argue the City's initial response to their claims violated section 910.8, which reads as follows: "If, in the opinion of the board or the person designated by it, a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, or with the requirements of a form provided under Section 910.4 if a claim is presented pursuant thereto, the board or the person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein. The notice shall be given in the manner prescribed by Section 915.4. The board may not take action on the claim for a period of 15 days after the notice is given."

The Klugs contend that because one of the letters the City sent on October 4, 2012 advised the Klugs the claims were insufficient, and the other letter denied the four claims as untimely, the two letters were, at best, misleading and confusing; alternatively, the Klugs contend the denial of the claims was prohibited because the City could not undertake any action for 15 days after the insufficiency letter was sent.

11

We agree with the City's reading of the two letters as advising the Klugs that any claims for injuries suffered more than six months before the date of the claims were untimely, and any claims for injuries suffered less than six months before the date of the claims were insufficient. Further, as the City notes, the failure to comply with section 910.8 is not grounds for a petition under section 946.6.

The Klugs also argue the City's notice denying their application to file a late claim violated section 911.8, negating the denial of the application. Section 911.8 provides: "(a) Written notice of the board's action upon the application [for leave to present a late claim] shall be given in the manner prescribed by Section 915.4. [¶] (b) If the application is denied, the notice shall include a warning in substantially the following form: [¶] 'WARNING [¶] 'If you wish to file a court action on this matter, you must first petition the appropriate court for an order relieving you from the provisions of Government Code Section 945.4 (claims presentation requirement). See Government Code Section 946.6. Such petition must be filed with the court within six (6) months from the date your application for leave to present a late claim was denied. [¶] 'You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.'"

The City's rejection of the Klugs' application for leave to present a late claim did not include the warning language from section 911.8. "[T]he obvious intent of subdivision (b) of section 911.8 was to give an unsuccessful applicant the information that applicant would need in order to file a timely section 946.6 petition." (*D.C. v. Oakdale Joint Unified School Dist.* (2012) 203 Cal.App.4th 1572, 1580.) If a public entity fails to provide the notice required by section 911.8, subdivision (b), and the claimant's petition for relief under section 946.6 is filed late, the public entity may be estopped from blocking the petition on the ground of tardiness. (*D.C. v. Oakdale Joint Unified School Dist.*, *supra*, at p. 1582.) In this case, however, the Klugs' petition for relief was timely filed in the trial court.

12

DISPOSITION

The judgment is affirmed.  Respondent to recover its costs on appeal.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

13