Filed 7/26/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSE MEDINA, | |
| Plaintiff and Respondent, | G063909 |
| v. | (Super. Ct. No. CIVDS1822556) |
| ST. GEORGE AUTO SALES, INC., et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Brian S. McCarville, Judge. Affirmed.

Wade W. Poulson for Defendants and Appellants.

Law Offices of Robert B. Mobasseri and David Alan Cooper for Plaintiff and Respondent.

\* \* \*

Respondent Jose Medina (Medina) purchased a used car (the car) from appellant St. George Auto Sales, Inc. (St. George) in December 2014. Appellant Alaska Federal Credit Union (Alaska Federal) financed the purchase. In August 2018, Medina filed a lawsuit against St. George and Alaska Federal (collectively, defendants) asserting a claim under the Consumer Legal Remedies Act (the CLRA; Civ. Code, § 1750 et seq.).[1] Generally, Medina alleged St. George had misrepresented that the car's engine was properly functioning and had also concealed extensive repairs to the car's engine to induce him into purchasing the car.

Defendants argued the CLRA claim was barred by its three-year statute of limitations. They asserted the CLRA's statute of limitations was strictly applied, and its accrual date was not extended by the discovery rule. And, even if it was, Medina had sufficient notice of his CLRA claim by March 2015, due to the activation of the car's check engine light multiple times. Defendants asserted these arguments in a demurrer, which was overruled, and a motion for summary judgment, which was denied. Likewise, at trial, defendants moved for nonsuit on these same grounds, but the nonsuit motion was also denied. In all three rulings, the trial court found there were questions of fact as to when Medina should have suspected defendants had harmed him. The jury eventually found for Medina, and judgment was entered in his favor.

On appeal, defendants argue the court should have found the CLRA claim was time-barred as a matter of law in its ruling on the demurrer, the summary judgment motion, or the nonsuit motion. Among other things, they contend the discovery rule does not apply to the CLRA's statute of

[1] All further statutory references are to the Civil Code unless otherwise stated.

2

limitations. No appellate court within California has squarely addressed this question. We find the discovery rule does apply and publish this case for that reason.

As to the remaining issues, defendants have failed to show they were prejudiced by the demurrer and the summary judgment rulings. They received a full trial on the statute of limitations issue, and the jury found against them. We also find no error in the trial court's denial of the nonsuit motion on grounds there were questions of fact as to when Medina's cause of action accrued. Thus, we affirm the judgment.

FACTS AND PROCEDURAL HISTORY

I.

MEDINA BUYS THE CAR

St. George sells used cars. In September 2014, it obtained a Chrysler 300 (defined above as, the car) at an auction with the intent to resell it. After the auction, its mechanics discovered the car had engine problems. Since the car was still under the manufacturer's warranty, St. George sent it to a Chrysler dealership in Ontario (Chrysler Ontario) where it underwent engine repairs for nearly two months.

Medina purchased the car from St. George near the end of December 2014. Alaska Federal financed the purchase. Prior to the purchase, St. George represented to Medina that the car's engine was properly functioning. It also represented that the car "was in good condition," and that St. George "[sold] nothing but quality vehicles." At no point during the sale did St. George disclose to Medina that the car had undergone nearly two months of engine work.

On Medina's drive home from the dealership after the purchase, the car's check engine light activated. Medina called the salesperson, and

3

asked, "what's going on? You told me everything was going to be in good condition. And here I am driving home, and the check engine light is coming on. What's going on?" Medina returned the car to St. George for service the next week.

Service on the car took about a week, and he received it back in the middle of January 2015. Within a day or two of receiving it back from service, the check engine light came on again. Medina called St. George and informed them the check engine light was on again and the problem had not been fixed. Medina dropped the car off for service at St. George for a second time. The repair took about two weeks, and Medina received it back in early February 2015. Medina was informed repairs were made to the car's oxygen sensor and the catalytic converter.[2]

The check engine light came on for a third time in late February 2015, about a week or two after the last service. Medina brought the car back to St. George, which sent it to Chrysler Ontario for service. Medina had trouble contacting St. George, so he called Chrysler Ontario directly and was told his car had been ready for over a week. Evidence at trial indicates an oxygen sensor was replaced. After Medina picked up the car from Chrysler Ontario, he drove over to St. George. He found a St. George salesperson on the sales floor and said, "what's going on . . . . This has been going on since I purchased the vehicle. The check engine light has been coming on, and now [the service manager] is not returning my calls." The employee found the

---

[2] "A catalytic converter is an emission control device intended to reduce toxic gases and other pollutants present in the motor vehicle engine exhaust gas produced by an internal combustion engine." (Abramson et al., Law of Environmental Protection: History of technology—forcing to reduce air pollution emitted by motor vehicles and engines (2024), § 12:173, fn. 15.)

service manager, and Medina told him, "now I have a problem. [I]'m pretty sure the check engine light is going to come back on."

About a week later, the check engine light came back on for a fourth time, and Medina brought the car back to St. George around the middle of March 2015. After he dropped off the car, a St. George employee drove Medina home (the driver). Medina testified at trial that the driver indicated he had been present when the car was first brought to St. George following the auction. The driver told Medina that a St. George mechanic plugged a scanner into the car and started clearing engine codes and "[did] a bunch of Mickey Mouses." Medina recalled thinking, "I'm listening and thinking to myself man they are not returning my calls, and he's telling me this. And it's like you know what, the car speaks for itself. Whatever the car does . . . . I can only get upset as much as I can, but the car speaks for itself."

After Medina received the car back, the check engine light came on for a fifth time around the middle of April 2015. Medina stated at trial, he was "curious as to [what was] the problem with the car." After some thought, he decided not to take the vehicle back to St. George (or anywhere) for repairs and to "leave it in God's hands and see where it [went] from there. He drove the car for several months with the check engine light on and testified "the car was running fine" during this period.

In December 2015, the car's engine started misfiring. Medina took the car to a Chrysler dealership in Monrovia (Chrysler Monrovia) "for a second opinion." Chrysler Monrovia determined the car's "engine itself had problems." Medina then asked the service advisor at Chrysler Monrovia for a copy of the previous work orders on the car. The service advisor provided them, and Medina learned of the extensive repairs to the car's engine before he bought it. Medina testified the prior work orders surprised him. After

5

seeing them, "I felt cold to my feet, and I knew that when I [saw] this that St. George was concealing the truth about the car before they sold it to me."

## II.

### *MEDINA'S COMPLAINT AND PRETRIAL MOTIONS*

On August 23, 2018, Medina filed a lawsuit against defendants asserting several claims, including violation of the CLRA. Defendants filed a motion for judgment on the pleadings, which was granted with leave to amend.

Medina filed an amended complaint (the complaint) that again asserted a CLRA claim against defendants. The CLRA claim was based on allegations St. George had misrepresented that (1) the car had a properly functioning engine, (2) the vehicle had undergone an inspection, and (3) St. George sold nothing but quality vehicles. The complaint also alleged (1) the check engine light came on several times in the first three months after Medina's purchase, (2) various repairs were made to the car after the check engine light came on, and (3) the driver told Medina in March 2015 that St. George erased codes from vehicles' computers before selling them.

Defendants demurred to the complaint on grounds the three-year statute of limitations had run on the CLRA claim. (See § 1783.) St. George made the alleged misrepresentations in December 2014, but Medina did not file suit until August 2018. Defendants also argued that even if the discovery rule extended the accrual date of the CLRA claim, Medina had notice of the engine problems by at least February 2015 based on the check engine light activity. The court overruled the demurer as to the CLRA claim, finding there were issues of fact as to whether "there was a justification for the delayed discovery." The court sustained the demurrer to Medina's only other claim, leaving the CLRA claim as Medina's sole cause of action.

6

Defendants later moved for summary judgment on grounds the CLRA claim was time-barred. In particular, they argued Medina was aware of his claims by at least March 2015 due to the multiple check engine lights and Medina's deposition testimony that the driver told him St. George erased codes and made "Mickey Mouse" fixes to cars. Medina did not dispute these facts but argued it was a question of fact as to whether his behavior was reasonable following these events.

The court denied defendants' summary judgment motion. It did not issue a written order. Rather, during the hearing, the court heard the parties' arguments as to the statute of limitations and succinctly stated, "it is a question of fact that the jury must determine."

III.

*TRIAL*

The court granted defendants' motion to bifurcate the trial to try the statute of limitations issue first. The initial trial for phase one was held in April 2022. The jury found Medina's CLRA claim was time-barred. As set forth above, Medina filed his lawsuit on August 23, 2018. The jury concluded Medina's harm had occurred before August 23, 2015, and he knew of facts that would have caused a reasonable person to suspect he had suffered harm and was wronged by defendants. Judgment was subsequently entered against Medina.

A few weeks after entry of judgment, Medina moved for a new trial based on a report from one of the jurors in the trial (the first juror). The first juror reported that another juror (the second juror) on the panel had stated during deliberation that he had discussed the case with his brother-in-law, who worked for a car manufacturer. According to the first juror, the second juror told the other jurors that his brother-in-law believed Medina

7

was suing the wrong party and St. George was not liable. The first juror professed this statement changed her view and caused her to vote in favor of defendants. The court granted the new trial motion and vacated the judgment.

A second trial was held in November 2022. After Medina rested his case, defendants made an oral motion for nonsuit.[3] They argued nonsuit was proper "in light of the fact that Mr. Medina knew about the engine problems, in light of the check engine. . . . He also admitted that he did not do anything since 2015 with regards to setting forth any claims as against [defendants]. [¶] He admitted driving [the car] numerous times. He admitted that . . . [the] engine light kept coming on."

The court denied the motion and resumed trial. The jury found that Medina's harm had occurred before August 23, 2015, but it concluded he was not aware of facts that would have caused a reasonable person to suspect he had been harmed by defendants' wrongful conduct.

The same day the jury provided its phase one verdict, Medina and defendants settled and agreed to present a stipulated judgment to the court. The stipulated judgment specified that defendants "right to appeal on any and all issues [was] preserved and not affected by the . . . settlement." The court entered the stipulated judgment on January 3, 2023.

---

[3] At trial, defendants made an oral request for a "directed verdict," not nonsuit. A directed verdict motion is generally made after *all parties* have presented their evidence. (Code Civ. Proc., § 630, subd. (a).) However, defendants made their motion after Medina's presentation of evidence and before they presented any evidence. Thus, the parties agree defendants mislabeled their motion and intended to move for nonsuit, not a directed verdict. (See Code Civ. Proc., § 581c, subd. (a).) We also clarify that the trial testimony set forth in the above sections came from the Medina's testimony in the second trial.

On appeal of the judgment, defendants argue the court should have found Medina's claims were untimely as a matter of law. Specifically, they challenge the demurrer and summary judgment rulings (collectively, the interlocutory rulings), and they also claim the court erred by denying their nonsuit motion. We find no reversible error.

DISCUSSION

I.

*THE CLRA'S STATUTE OF LIMITATIONS*

"The Legislature enacted the CLRA 'to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'" (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 954.) "[T]he CLRA authorizes any consumer who has been damaged by an unlawful method, act, or practice to bring an action for various forms of relief . . . ." (*Ibid.*) The statute of limitations for a CLRA claim is three years. (§ 1783.)

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.] An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806–807.) Under the discovery rule, "the statute of limitations does not begin to run until 'the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.'" (*Eisenberg Village Etc. v. Suffolk Construction Co., Inc.* (2020) 53 Cal.App.5th 1201, 1213.)

Application of the discovery rule is typically a question of fact. "As our high court has observed, '[t]here are no hard and fast rules for

9

determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. [Citation.] It is a question for the trier of fact.' [Citation.] 'However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law.'" (*Brewer v. Remington* (2020) 46 Cal.App.5th 14, 28.)

Defendants appear to contend the court erred by applying the discovery rule to the CLRA's three-year statute of limitations. Rather, they believe the CLRA's statute of limitations is strictly applied, and its accrual date cannot be extended by the discovery rule. Since there is no dispute Medina filed his CLRA claim more than three years after St. George's alleged misrepresentations, defendants assert it is clearly time-barred. We disagree and find the discovery rule applies to the CLRA's statute of limitations.

We are not aware of any California case that has held the discovery rule applies to the CLRA. But as our Supreme Court has explained in dictum, the CLRA's statute of limitations "has been interpreted to run "'from the time a reasonable person would have discovered the basis for a claim.'"" (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 645; see *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1295 [stating the CLRA's statute of limitations would "probably run from the time a reasonable person would have discovered the basis for a claim"].) Further, numerous district courts have held the discovery rule applies to the CLRA's statute of limitations. (See, e.g., *Franco v. Ford Motor Co.* (C.D. Cal. 2022) 644 F.Supp.3d 672, 682; *Goldstein v. General Motors LLC* (S.D. Cal. 2021) 517 F.Supp.3d 1076, 1091; *Asghari v. Volkswagen Group of America, Inc.* (C.D. Cal. 2013) 42 F.Supp.3d 1306, 1320; *Keegan v. American Honda Motor Co., Inc.* (C.D. Cal. 2012) 284 F.R.D. 504, 543 – 544; *Yumul v. Smart Balance, Inc.* (C.D. Cal. 2010) 733 F.Supp.2d 1134, 1140–

1144.) In contrast, defendants have not cited any case stating the discovery rule does not apply to the CLRA.[4]

Further, CLRA claims are the type of claim to which the discovery rule is generally applied. "'The policy reason behind the discovery rule is to ameliorate a harsh rule that would allow the limitations period for filing suit to expire before a plaintiff has or should have learned of the latent injury and its cause.'" (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797–798.) Thus, it "most frequently applies when it is particularly difficult for the plaintiff to observe or understand the breach of duty, or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand." (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1248.)

CLRA claims are intended to protect consumers from unfair and deceptive business practices, such as false and deceptive representations. (§ 1770, subd. (a); *McGill v. Citibank, N.A.*, *supra*, 2 Cal.5th at p. 954.) Thus, like fraud claims, which are subject to the discovery rule (Code Civ. Proc., § 338, subd. (d)), CLRA claims may be difficult for a plaintiff to detect. For example, a consumer might not be aware of product defects that could give rise to a CLRA claim until years after the unfair or deceptive business practice has occurred. (See, e.g., *Goldstein v. General Motors LLC*, *supra*, 517 F.Supp.3d at pp. 1091–1092 [plaintiffs were not aware of defects in car's touchscreen until about two years after sale].) Because the injury underlying

---

[4] Defendants appear to cite *Keegan v. American Honda Motor Co., Inc.*, *supra*, 284 F.R.D. 504, to argue the discovery rule does not apply to the CLRA. But the portion of *Keegan* they cite discusses the application of the discovery rule to various claims under New York law. (*Id.* at p. 544.) In analyzing the CLRA claim, *Keegan* found "[t]he discovery rule tolls the statute of limitations for CLRA claims . . . ." (*Id.* p. 543.)

a CLRA claim may be hidden for years, the discovery rule should be applied to ensure its limitations period does not expire before a plaintiff learns of his or her claim. (See *Pooshs v. Philip Morris USA, Inc.*, *supra*, 51 Cal.4th at pp. 797–798.)

## II.

### *THE INTERLOCUTORY RULINGS*

While an order overruling a demurrer or denying a motion for summary judgment is not directly appealable, it "may be reviewed on direct appeal from a final judgment entered after a trial." (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343; *Boy Scouts of America National Foundation v. Superior Court* (2012) 206 Cal.App.4th 428, 438.) In such an appeal, however, the appellant must "show the purported error constituted prejudicial, or reversible, error (i.e., caused a miscarriage of justice). [Citation.] In general, an order denying a motion for summary judgment [(or overruling a demurrer)] does not constitute prejudicial error if the *same question* was subsequently decided adversely to the moving party after a trial on the merits." (*Dintino*, at p. 343.)

In *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830 (*Waller*), the trial court denied the defendant's summary judgment motion. The case proceeded to trial, and the jury found in the plaintiffs' favor. (*Id.* at p. 832.) On direct appeal of the judgment after trial, the defendant argued the court erred by denying its summary judgment motion. Defendant asserted that had the motion been granted as a matter of law, there would have been no trial and no adverse judgment would have been entered against it. (*Id.* at pp. 832–833.)

The appellate court rejected the defendant's argument. It explained, "When the trial court commits error in ruling on matters relating

12

to pleadings, procedures, or other preliminary matters, reversal can generally be predicated thereon only if the appellant can show resulting prejudice, and the probability of a more favorable outcome, *at trial*. Article VI, section 13 [of the California Constitution], admonishes us that error may lead to reversal only if we are persuaded 'upon an examination of the entire cause' that there has been a miscarriage of justice. In other words, we are not to look to the particular ruling complained of in isolation, but rather must consider the full record in deciding whether a judgment should be set aside. Since we are enjoined to presume that the trial itself was fair and that the verdict in plaintiffs' favor was supported by the evidence, we cannot find that an erroneous pretrial ruling based on declarations and exhibits renders the ultimate result unjust." (*Id*. at p. 833.)

As other courts have explained: "'"A decision based on less evidence (i.e., the evidence presented on the summary judgment motion) should not prevail over a decision based on more evidence (i.e., the evidence presented at trial).'"'" (*California Housing Finance Agency v. Hanover/California Management & Accounting Center, Inc.* (2007) 148 Cal.App.4th 682, 688.)

Defendants appear to argue they do not need to show prejudice because Medina consented to their appeal of the interlocutory orders in the stipulated judgment. In support of their argument, they cite *Coy v. County of Los Angeles* (1991) 235 Cal.App.3d 1077, 1082 (*Coy*), which reversed a judgment after trial in favor of the plaintiff on grounds the trial court had wrongly denied the defendant's summary judgment motion. In a footnote, the appellate court explained that "[the] Plaintiff does not contest the [defendant's] right to raise the issue of the correctness of the order denying

13

the pretrial summary judgment motion on appeal after a trial." (*Id*. at p. 1082, fn. 2.)

Defendants argue that like *Coy*, Medina consented to their appeal of the interlocutory orders. Their argument is based on a portion of the stipulated judgment stating, "DEFENDANTS' right to appeal on any and all issues are preserved and not affected by the [parties'] settlement." They also cite statements made by Medina's counsel after the trial that Medina "would not object to whatever scope of appeal [defendants] would want to raise."

Defendants read too much into these statements. The stipulated judgment indicates the parties' *settlement* did not affect defendants' appeal rights. Put differently, Medina agreed he would not argue that any appeal made by defendants violated the settlement or was otherwise affected by it. But nothing in the stipulated judgment or the cited statements indicates either side had contemplated removing the prejudice requirement for an appeal of the interlocutory orders.

This interpretation of the parties' agreement is supported by the stipulated judgment's use of the word "preserved." The Collins Dictionary explains that "[i]f you preserve a situation or condition, you make sure that *it remains as it is, and does not change* or end." (Collins Online Dict. (2024) <https://www.collinsdictionary.com/us/dictionary/english/preserve> [as of July 17, 2024], archived at: https://perma.cc/8D3T-5GDY, italics added.) Thus, the use of "preserve" indicates defendants sought to keep intact their normal rights of appeal as to the judgment. The settlement would not change these rights. But waiver of the prejudice requirement is outside these normal rights and, therefore, is not a right that could be "preserved." Rather, such a waiver would require the *addition* of a right, which goes beyond defendants' preservation of rights. Moreover, nothing else in the stipulated judgment

14

indicates Medina agreed that defendants could pursue an appeal of the interlocutory orders without having to show prejudice.

Defendants also contend they were prejudiced by the interlocutory orders. They argue that if the judge had found in their favor on either the demurrer or the summary judgment motion, the jury would not have been able to decide the statute of limitations issue against them. But the same essential argument was rejected by *Waller*. (*Waller*, *supra*, 12 Cal.App.4th at pp. 832–833.) Thus, we find it unpersuasive.

We note that review of an order denying summary judgment "on appeal from the final judgment has been allowed in exceptional cases." (Weil & Brown, Cal. Prac. Guide: Civil Procedure Before Trial (The Rutter Group 2024) ¶ 10:385.1, p. 10–168.) But defendants have not explained why this is an exceptional case that merits departure from the general rule, and we will not make the argument for them. (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 679, fn. 8.)

Finally, defendants argue the court erred by failing to comply with Code of Civil Procedure section 437c, subdivision (g), because its order failed to state the issues of fact requiring trial. Even if we agreed the order was deficient, this same argument was rejected in *Waller*. (*Waller*, *supra*, 12 Cal.App.4th at pp. 832–833.) For the reasons above, defendants have failed to show any prejudice from this purported error.

### III.

#### MOTION FOR NONSUIT

"A motion for nonsuit is a procedural device which allows a defendant to challenge the sufficiency of plaintiff's evidence to submit the case to the jury. [Citation.] Because a grant of the motion serves to take a case from the jury's consideration, courts traditionally have taken a very

15

restrictive view of the circumstances under which nonsuit is proper." (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 117.) Motions for nonsuit are granted "only under very limited circumstances." (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838.) The case must go to the jury if there are any doubts. (*Golceff v. Sugarman* (1950) 36 Cal.2d 152, 153.)

A motion for nonsuit "should state the precise grounds on which it is made, with the defects in the plaintiff's case clearly and particularly indicated. This gives the plaintiff an opportunity to cure the defect by introducing additional evidence." (*John Norton Farms, Inc. v. Todagco* (1981) 124 Cal.App.3d 149, 161.) If the stated grounds "'are insufficient, a nonsuit is improper, *even though other good grounds exist*, for the plaintiff's attention was not called to them and he had no opportunity to eliminate them.'" (*Ibid*, italics added.) "[D]efects not specifically pointed out by the moving party cannot be considered by the trial court, or by [the appellate court], in determining the merits of the motion." (*Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 378.)

"A defendant is entitled to a nonsuit if the trial court determines the evidence presented by plaintiff is insufficient to permit a jury to find in his or her favor as a matter of law. [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded.'" (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 650.) "[A]ll reasonable inferences to be drawn from the evidence are drawn against the moving defendant and in favor of the plaintiff." (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67

16

Cal.App.4th 743, 750.) We review denial of a nonsuit motion de novo, applying the same standard as the trial court on appeal. (*IIG Wireless, Inc. v. Yi*, *supra*, 22 Cal.App.5th at p. 650.)

Here, defendants moved for nonsuit on grounds "Medina knew about the engine problems," because the "[check] engine light kept coming on." Because we strictly construe the grounds asserted in defendants' motion, we do not consider any other grounds that could have been established by other evidence. (*John Norton Farms, Inc. v. Todagco*, *supra*, 124 Cal.App.3d at p. 161; *Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, *supra*, 9 Cal.App.4th at p. 378.)

As noted above, application of the discovery rule is generally a question of fact. It will not be decided as a matter of law "'unless reasonable minds can draw only one conclusion from the evidence.'" (*Kernan v. Regents of University of California* (2022) 83 Cal.App.5th 675, 684.) Here, it cannot be concluded as a matter of law that Medina had notice of his claims against defendants based on the number of times the check engine light came on.

At trial, there were questions of fact as to whether the check engine light should have alerted Medina that the car's engine was not properly functioning. There was evidence at trial that a check engine light could be caused by several issues, not all of which indicate engine problems. Medina testified he had taken automotive mechanic courses in junior college. Based on his understanding, a check engine light could activate for a variety of reasons, including "a gas cap, an air filter, a vacuum [line] broken," malfunctioning sensors, or engine problems. It was unclear what the light signaled unless the engine was taken "apart and diagnose[d]." Similarly, Medina testified that when the check engine light came on for the first time,

17

he did not know what it signaled because the light "could mean all sorts of things."

Further, after the check engine light came on for the fifth time in April 2015, Medina continued to drive the car with the activated light and testified it was "running fine" until December 2015, when the car's engine began misfiring. Medina also testified that after the check engine light came on for the fifth time, he was "curious as to what's the problem with the car." Interpreting this testimony most favorably to Medina, it shows he knew the car had some general issue but was unaware it had engine problems. Because the car was "running fine" despite the check engine light, it could be reasonably inferred that Medina had no reason to suspect the car's engine was not properly functioning.

Considering the evidence favorable to Medina and disregarding the unfavorable evidence, as we must, a check engine light does not necessarily signal that a car has engine problems. Although the check engine light kept activating, there is evidence Medina did not know why it was activating. The above evidence creates a question of fact as to whether Medina knew or should have known the activated check engine light meant the car's engine was not properly functioning.

While not cited in the nonsuit motion, we address the evidence at trial concerning the driver's statement that St. George had cleared codes and done a lot of "Mickey Mouse" fixes to the car.[5] To begin, this conflicting evidence is disregarded on review. (*IIG Wireless, Inc. v. Yi, supra,* 22 Cal.App.5th at p. 650.) And, even if it were considered, it still raises

---

[5] We specifically address this evidence since it was raised numerous times throughout the course of this case and appears to have been material to defendants' argument at trial.

questions of fact as to what a reasonable person would understand clearing engine codes and "Mickey Mouse" fixes to mean. Nothing in the driver's statements conveyed the seriousness of the cleared codes or the fixes. Medina could have reasonably believed St. George mechanics were clearing trivial engine codes and performing "Mickey Mouse" fixes to minor issues. It could have been reasonable for him to believe that if any major codes or issues arose during those scans, the St. George would have repaired them or told him of such issues. Medina's statements that "the car speaks for itself," is ambiguous. It was up to a jury to determine its meaning.

Moreover, even if Medina had notice of the engine problems, defendants still had to show Medina had reason to suspect they "ha[d] done something wrong to [him].'" (*Eisenberg Village Etc. v. Suffolk Construction Co., Inc.*, *supra*, 53 Cal.App.5th at p. 1213.) A plaintiff must have "suspicion of wrongdoing, and therefore an incentive to sue." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111.) Defendants' nonsuit motion did not argue Medina should have suspected that St. George had made misrepresentations or concealed information about the car's engine. It only argued he knew of the engine problems. This omission is fatal to their nonsuit motion because it deprived Medina of an opportunity to introduce additional evidence explaining his failure to suspect defendants had wronged him.[6]

---

[6] On appeal, defendants argue Medina should have suspected St. George had misrepresented that car's condition and cite evidence in support. But they do not explain how we can consider these points on appeal when they were not raised below in their nonsuit motion.  As such, we will not consider this argument.  (*City of Riverside v. Horspool*, *supra*, 223 Cal.App.4th at p. 679, fn. 8; *Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, *supra*, 9 Cal.App.4th at p. 378; *John Norton Farms, Inc. v. Todagco*, *supra*, 124 Cal.App.3d at p. 161.)

We are also unpersuaded by defendants' citation to *Mark K. v. Roman Catholic Archbishop* (1998) 67 Cal.App.4th 603 (*Mark K.*), in which the plaintiff sued the Roman Catholic Archbishop of Los Angeles (the church) for negligent supervision due to its failure to supervise a priest that had molested him 20 years prior. (*Id.* at pp. 606–607.) The plaintiff argued the statute of limitations on his claim did not begin to accrue until 1996, when he learned that prior to his abuse, the church had covered up abuse reports concerning other children. (*Id.* at pp. 607–608.) The court disagreed. It explained that the plaintiff's injury was his own abuse by the priest, which had not been concealed. (*Id.* at p. 613.) The "[p]laintiff's failure to allege lack of knowledge or appreciation of [the priest's] misconduct deprive[d] him of any basis upon which to disclaim inquiry notice that the church was a potential tortfeasor. Plaintiff knew that [the priest] was a priest of the church, thereby obligating plaintiff to determine, as with any employer whose employee has injured a third party, whether the church shouldered some responsibility for the misconduct of its priest." (*Id.* at p. 612.) The church's concealment of the prior abuse allegations "was merely evidence that the wrong had been committed." (*Id.* at p. 613.)

Unlike *Mark K.*, Medina has presented evidence showing he failed to understand or appreciate his injury until December 2015.

## DISPOSITION

The judgment is affirmed. Medina is entitled to his costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.